UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

TIMOTHY DURLEY,

    Plaintiff,

v.    Case No. 25-cv-1154-pp

JASON HILL, *et al.*,

    Defendants.

**ORDER SCREENING COMPLAINT UNDER 28 U.S.C. §1915A**

On August 26, 2025, the issued entered an order denying plaintiff Timothy Durley's motion for leave to proceed without prepaying the filing fee because he has accumulated three strikes and the complaint does not allege that he is in imminent danger of serious physical injury. Dkt. No. 6. The court ordered that if the plaintiff wanted to proceed in this lawsuit, he must prepay the full $405 filing fee by September 25, 2025. Id. at 4.

On September 8, 2025, the court received the full $405 fee. The plaintiff filed multiple letters telling the court that his brother would be paying that fee and then advising the court that his brother had paid the fee. Dkt. Nos. 7–9. Because the court has received the full payment of the $405 filing fee, the court will screen the plaintiff's complaint. Dkt. No. 1.

**I.    Screening the Complaint**

    A.    <u>Federal Screening Standard</u>

Under the Prison Litigation Reform Act (PLRA), the court must screen complaints brought by incarcerated persons seeking relief from a governmental

1

entity or officer or employee of a governmental entity. 28 U.S.C. §1915A(a). The court must dismiss a complaint if the incarcerated person raises claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. §1915A(b).

In determining whether the complaint states a claim, the court applies the same standard that it applies when considering whether to dismiss a case under Federal Rule of Civil Procedure 12(b)(6). See Cesal v. Moats, 851 F.3d 714, 720 (7th Cir. 2017) (citing Booker-El v. Superintendent, Ind. State Prison, 668 F.3d 896, 899 (7th Cir. 2012)). To state a claim, a complaint must include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The complaint must contain enough facts, "accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows a court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (citing Twombly, 550 U.S. at 556).

To state a claim for relief under 42 U.S.C. §1983, a plaintiff must allege that someone deprived him of a right secured by the Constitution or the laws of the United States, and that whoever deprived him of this right was acting under the color of state law. D.S. v. E. Porter Cnty. Sch. Corp., 799 F.3d 793, 798 (7th Cir. 2015) (citing Buchanan–Moore v. County of Milwaukee, 570 F.3d

824, 827 (7th Cir. 2009)). The court construes liberally complaints filed by plaintiffs who are representing themselves and holds such complaints to a less stringent standard than pleadings drafted by lawyers. Cesal, 851 F.3d at 720 (citing Perez v. Fenoglio, 792 F.3d 768, 776 (7th Cir. 2015)).

B. The Plaintiff's Allegations

The complaint names as defendants Correctional Officer Jason Hill, Sergeant Rodney Reynolds and Lieutenant Christopher Schwab, all of whom work at Waupun Correctional Institution where the plaintiff is incarcerated. Dkt. No. 1 at 1–2. The plaintiff alleges that on October 28, 2022, a non-defendant officer was passing out medication in the restricted housing unit where the plaintiff resided. Id. at 4. When the officer opened the plaintiff's trap door to give him his medication, the plaintiff "attempted to grab" the officer's arm "to pull him to the trap." Id. The officer yanked his arm away, and the plaintiff reached through his trap and grabbed the medication cart, which was then "sna[t]ched away from [him]." Id. A non-defendant lieutenant later came to the plaintiff's cell and asked if the plaintiff would voluntarily exit his cell to be placed on control status for assaulting the officer. Id. The plaintiff refused, and the lieutenant told him that she "[would] be back for a suit up team." Id. The plaintiff says he received a conduct report for assaulting the officer. Id.

At around 5:00 p.m., Sergeant Reynolds, Officer Hill and Lieutenant Schwab came to the plaintiff's cell with two other officers. Id. at 4–5. They again asked the plaintiff if he would voluntarily leave to control status, but he again refused. Id. at 5. The plaintiff says that one of the officers "attempted to

3
Case 2:25-cv-01154-PP    Filed 10/14/25    Page 3 of 9    Document 10

pepper ball [him] with paint ball gun" but had no shot, and another officer was recording the events. Id. Either Reynolds or Schwab stated, "we got to go in," and the plaintiff's "cell door opened." Id. The plaintiff says that he escaped from his cell and ran into the hallway "fighting with staff" by other cells in the area. Id. The plaintiff alleges that he eventually ended up "on the ground on [his] back, not resisting or moving or nothing." Id. He alleges that Hill yelled out that the plaintiff was biting him, and he hit the plaintiff several times in the face. Id. The plaintiff says that Reynolds also hit or kicked him and that Schwab twice used his taser on the plaintiff. Id. The plaintiff claims that he did not bite Hill, who did not seek medical attention for the alleged biting. Id. He also says that video and audio of the events "were preserved." Id.

The plaintiff alleges that the officers handcuffed him, placed him in a restraint chair and took him to the nurse's station, where a non-defendant nurse treated him for his wounds and breathing difficulties. Id. He says he saw medical staff again over the next few days, and that another lieutenant took pictures of his wounded face. Id. at 5–6. The plaintiff says that Hill has not been allowed back in restricted housing since this incident. Id. at 6.

The plaintiff sues the defendants in their individual capacities for violating his rights under the Eighth Amendment. Id. He seeks compensatory and punitive damages and injunctive relief ordering staff on the "suit up team . . . to wear active audio body camera's [sic]." Id. The plaintiff also seeks removal of the strikes that the court previously imposed under 28 U.S.C. §1915(g). Id.

C.  Analysis

The plaintiff's allegations amount to a claim of excessive force, which violates the Eighth Amendment's prohibition of cruel and unusual punishments. See Jones v. Anderson, 116 F.4th 669, 677 (7th Cir. 2024) (citing Hudson v. McMillian, 503 U.S. 1, 5 (1992)). An Eighth Amendment claim consists of an objective and subjective component. Farmer v. Brennan, 511 U.S. 825, 834 (1994). In the context of a claim of excessive force, the plaintiff must show both that (1) "the alleged wrongdoing was objectively 'harmful enough' to establish a constitutional violation," and (2) "'the officials act[ed] with a sufficiently culpable state of mind.'" Hudson, 503 U.S. at 8 (quoting Wilson v. Seiter, 501 U.S. 294, 303 (1991)). The court may consider factors including "the need for the application of the force, the amount of force applied, the threat an officer reasonably perceived, the effort made to temper the severity of the force used, and the extent of the injury that force caused to an inmate." Jones, 116 F.4th at 677 (quoting Fillmore v. Page, 358 F.3d 496, 504 (7th Cir. 2004)). The primary question is "whether force was applied in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm." Whitley v. Albers, 475 U.S. 312, 320–21 (1986).

The plaintiff alleges that after he assaulted a correctional officer, prison officials came to remove him from his cell and place him on controlled status. He refused officials' orders to come out, escaped from his cell and fought with officers. The plaintiff's violent resistance to the cell extraction justified the

officers' use of force to restore order and gain his compliance. See McCottrell v. White, 933 F.3d 651, 663 (7th Cir. 2019) (citing Whitley, 475 U.S. at 320).

But the plaintiff alleges that after officers got him to the ground and onto his back, he stopped resisting and fighting. Because the plaintiff no longer was resisting, there was no longer a need for violent force. See McCottrell, 933 F.3d at 667 (citing Lewis v. Downey, 581 F.3d 467, 477–78 (7th Cir. 2009)). The plaintiff alleges that Officer Hill falsely claimed that the plaintiff bit him and then hit him several times in the face. If these allegations are true—and at the screening stage, the court must assume that they are—they suggest that Hill's continued use of force was unnecessary and done "for the very purpose of causing harm." Whitley, 475 U.S. at 321. The court will allow the plaintiff to proceed on an Eighth Amendment claim against Hill based on these allegations.

The plaintiff has not stated an Eighth Amendment claim against Sergeant Reynolds or Lieutenant Schwab. He alleges that Reynolds and Schwab responded to Hill's false claim that the plaintiff had bitten him by continuing to use force, including by kicking him and using a taser. But these officers could reasonably have believed Hill's assertion that the plaintiff bit him, which would have justified their continued use of force to restore discipline and neutralize the perceived threat to their colleague. See Jones, 116 F.4th at 677 (including "the threat an officer reasonably perceived" as factor the court must consider in excessive force analysis). The plaintiff has not alleged that Reynolds and Schwab had any reason to disbelieve Hill; his allegations suggest that they had to react quickly in a dangerous and volatile situation to avoid further harm to themselves

or others. See Whitley, 475 U.S. at 320 (citing Hudson v. Palmer, 468 U.S. 517, 526–527 (1984)) ("[P]rison officials undoubtedly must take into account the very real threats [that] unrest presents to inmates and prison officials alike . . . ."). The court will not allow the plaintiff to proceed on an Eighth Amendment claim against Reynolds or Schwab because his allegations do not support a claim that those officers used force maliciously to cause harm or that they knew that Hill was using excessive force and "had a realistic opportunity" to intervene and stop him. See Gill v. City of Milwaukee, 850 F.3d 335, 342 (7th Cir. 2017).

The plaintiff seeks damages against Hill, and he also seeks injunctive relief ordering Waupun staff to wear body cameras during cell extractions. The court will not allow the plaintiff to proceed on his request for injunctive relief because he does not allege that "there is a continuing violation of federal law." Kress v. CCA of Tenn., LLC, 694 F.3d 890, 894 (7th Cir. 2012) (citing Green v. Mansour, 474 U.S. 64, 73 (1985)). The plaintiff's request also is beyond the limited scope of injunctive relief permitted under the PLRA, see 18 U.S.C. §3626(a)(1), and granting him this relief would intrude on prison officials' "broad administrative and discretionary authority" to manage their institutions, Westefer v. Neal, 682 F.3d 679, 683 (7th Cir. 2012).

Finally, the plaintiff asks the court to remove the strikes it imposed under 28 U.S.C. §1915(g) when it dismissed his previous cases for failure to state a claim. See Durley v. Hohenstern, Case No. 22-cv-1293, 2023 WL 5239796, at *2 (E.D. Wis. Aug. 15, 2023) (citing cases where court imposed a strike). But the plaintiff has not demonstrated that the court wrongly imposed

7
Case 2:25-cv-01154-PP   Filed 10/14/25   Page 7 of 9   Document 10

those strikes or that his previous cases stated claims for relief. He may not use a new lawsuit under §1983 to challenge his previous dismissals or the strikes that the court imposed when it dismissed his past cases.

## II. Conclusion

The court **DISMISSES** defendants Rodney Reynolds and Christopher Schwab.

Under an informal service agreement between the Wisconsin Department of Justice and the court, the court will electronically transmit a copy of the complaint and this order to the Wisconsin Department of Justice for service on defendant Jason Hill. Under the informal service agreement, the court **ORDERS** the defendant to respond to the complaint within sixty days.

The court **ORDERS** that the parties must not begin discovery until after the court enters a scheduling order setting deadlines for completing discovery and filing dispositive motions.

The court **ORDERS** that plaintiffs who are incarcerated at Prisoner E-Filing Program institutions[1] must submit all correspondence and case filings to institution staff, who will scan and e-mail documents to the court. Plaintiffs who are incarcerated at all other prison facilities must submit the original document for each filing to the court to the following address:

---

[1] The Prisoner E-Filing Program is mandatory for all persons incarcerated at Green Bay Correctional Institution, Waupun Correctional Institution, Dodge Correctional Institution, Wisconsin Secure Program Facility, Columbia Correctional Institution, and Oshkosh Correctional Institution.

Office of the Clerk
United States District Court
Eastern District of Wisconsin
362 United States Courthouse
517 E. Wisconsin Avenue
Milwaukee, Wisconsin 53202

DO NOT MAIL ANYTHING DIRECTLY TO THE JUDGE'S CHAMBERS. It will only delay the processing of the case.

The court reminds the plaintiff that if he fails to file documents or take other required actions by the deadlines the court sets, the court may dismiss the case based on his failure to diligently pursue it. The parties must notify the Clerk of Court of any change of address. The court advises the plaintiff that it is his responsibility to promptly notify the court if he is released from custody or transferred to a different institution. The plaintiff's failure to keep the court advised of his address may result in the court dismissing this case without further notice.

Dated in Milwaukee, Wisconsin this 14th day of October, 2025.

**BY THE COURT:**

**HON. PAMELA PEPPER**
**Chief United States District Judge**